Anthony J. Cerrato, J.
By order to show cause dated November 1, 1973 the plaintiffs herein seek an order enjoining the Building Inspector, the Town Board of the Town of Clarkstown and the Clarkstown Planning Board from issuing any building permits or any site plan approvals with respect to the construction of a condominium development known as Kingsgate Condominium.
*222 The defendants cross-move for an order dismissing the complaint or, in the alternative, for an order permitting BAI Realty of Clarkstown, Inc. to intervene as a party defendant upon the grounds that it is the owner of the property being processed by the Clarkstown Planning Board and the subject of this application. The application to permit the aforesaid intervention was granted by this court upon the return of the instant motion.
Upon an examination of the papers submitted herein, and after lengthy conferences with counsel for the respective parties, this court deemed it necessary that a hearing be held on this matter. Said hearing was held on November 21, 1973, and continued on December 20, 1973, during which testimony and evidence was received, by the court, acting without a jury. As a result, the sole question to be resolved is whether or not a condominium is a subdivision so as to make applicable section 239-n of the General Municipal Law and section 276 of the Town Law.
The term ‘ ‘ condominium ’ ’ may be defined generally as a system of separate ownership of individual units in a multi-unit project. (Rohan and Reskin, Condominium Law and Practice, vol. 1, § 1.01 [1].) It is a system of ownership of real property whereby a parcel of real estate and the building or buildings existing thereon are owned by more than one person, each of whom has two separate and distinct real property interests: (1) fee simple ownership of a unit or apartment; and (2) an undivided interest, together with all of the other unit owners in the project, in the common elements. (1A Warren’s Weed, New York Real Property, § 1.01.)
By the terms of the Real Property Law (art. 9-B) known as the “ Condominium Act ” and hereinafter referred to as “ Act ”, each unit owner is entitled to the exclusive ownership and possession of this unit (Real Property Law, § 339-h) which, together with its undivided interest in the common elements, is for all purposes considered real property. (Real Property Law, § 339-g.) The common elements, as defined by the Act, include: “ (a) The land on which the building is located; (b) The foundations, columns, girders * * * (c) * * * yards, gardens, recreational or community facilities * * * and (h) All other parts of the property necessary or convenient to its existence, maintenance and safety, or normally in common use.” (Real Property Law, § 339-e, subd. 3.) In addition, Real Property Law (§ 339-i, subd. 3) specifically provides: “ The common elements shall remain undivided and no right shall exist to partition or divide any thereof.”
*223 Moreover, the Legislature, in recognizing that a condominium was not to be treated as a subdivision, specifically stated that: ‘ ‘ Article nine-a of the Real Property Law [dealing with subdivided land] shall not apply to the property or any unit.” (Real Property Law, § 339-ee.)
In view of all of the foregoing, the inescapable conclusion is that a condominium is not a subdivision of real property and, hence, section 239-n of the General Municipal Law (authorizing the County Planning Board to review certain subdivision plots) and section 276 of the Town Law (authorizing the Planning Board to approve plats showing lots, blocks, or sites) are inapplicable to the case at bar.
During the course of the hearing the defendants, recognizing the necessity and the desire of all concerned that the condominium be erected in the best possible manner, agreed to submit the site plans to the County Planning Board for review, without conceding the necessity for said submission. The Rockland County Planning Board, upon -reviewing the proposed Kingsgate Condominium Development, made numerous findings with respect thereto. In fact, the hearing held on December 20, 1973 concerned itself primarily with a review of these findings, the greater portion of which the parties agreed to abide by.
As a matter of fact, the only sharp dispute which arose was as to the stormwater retention system required to be provided. This controversy centered around the question of whether or not the said retention should be based on a 25- or 50-year storm frequency criteria.
Inasmuch as this court is of the opinion that the proposed condominium is not a subdivision and therefore not subject to a review by the County Planning Board, this court cannot and will not direct that the defendants follow the recommendations of said board. It should, however, be noted that two engineers testified as to the adequacy of a storm retention system based on a 25-year storm frequency criteria and there was no sworn testimony offered to the contrary. The request of the plaintiffs to have the County Engineer testify was granted, but he was not produced to be examined.
As a result, and in the opinion of the court, the planned storm-water retention system is adequate. To hold contrary at this late date would be an undue hardship to the developers of this project.
Accordingly, the motion for an injunction is denied, and the cross motion for an order dismissing the complaint is granted.